IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JENNIFER MALDONADO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:21-cv-645-ECM |
| ) | [WO] |
| TOWN OF COTTONWOOD, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

### I.   INTRODUCTION

Plaintiff Jennifer Maldonado ("Maldonado") went to pay her water bill.  As she tells it, for the transgression of trying to pay with coins, she was accosted, rushed, tackled, and beaten by Defendants Tony Money ("Money") and Jim L. Smith ("Smith") ("Officers"), officers of the Defendant Town of Cottonwood ("Cottonwood").  The Defendants now ask the Court to dismiss Maldonado's resulting suit, arguing that they are immune under a variety of theories.  The Court agrees in part.

### II.   BACKGROUND

Maldonado is a resident of Cottonwood, Alabama, a town for which both Money and Smith work as police officers.  In August 2019, Maldonado went to the Cottonwood Town Hall to pay her water bill.  Upon arrival, however, she was informed that the coins she brought would not be accepted.  Her entreaties for help were left unmet.

So instead, she gave up and turned to leave.  Money and Smith, who had been working at the Town Hall, followed her outside.  According to Maldonado, "[w]ords were

exchanged" between the three. (Doc. 1-1, para. 6). Maldonado again turned to leave, only for Money and Smith to "rush[] and tackle[]" her in the lot. (*Id.*). Maldonado explains that as she lay on the ground, fearing for her life, the two "severely beat[]" her, then arrested her and hauled her off to jail. (*Id.*). She was left with injuries—some permanent and disabling—to her neck, arms, and shoulders, alongside emotional trauma, humiliation, and anxiety.

Maldonado now sues Cottonwood, Money, and Smith. She brings three counts: against all Defendants, she alleges a deprivation of her rights under the Fourth Amendment in violation of 42 U.S.C. § 1983 (Count III);[1] against Cottonwood, and against Money and Smith in their individual capacities,[2] she also asserts claims of assault and battery (Count

---

[1] Count III also includes a claim asserted under 42 U.S.C. § 1985. The Defendants argue that the claim should be dismissed, arguments Maldonado did not address in response. Maldonado also fails to provide any other reason the claim should survive. Accordingly, the Court finds that Maldonado has abandoned her § 1985 claim. *See Humphrey v. City of Headland*, 2012 WL 2568206, at *2 (M.D. Ala. July 2, 2012) (explaining that "[f]ederal courts in this circuit, as well as in others, have found that a party's failure to respond to or oppose arguments raised in a pending motion may result in an abandonment of those issues" and collecting cases). However, even if Maldonado had not abandoned her § 1985 claim, it still would not go forward. Maldonado's § 1985 claim is a bare legal assertion—she pleads no facts describing how, when, where, or for what purpose, these Defendants formed a conspiracy. She alleges only individual actions undertaken by the Defendants, and then asserts a conspiracy. That is not enough to survive a motion to dismiss. *See, e.g.*, *Sparks v. Bell*, 639 F. App'x 617, 618–19 (11th Cir. 2016) (affirming a dismissal of a § 1985 claim where the plaintiff "alleged only unrelated actions taken by each individual defendant . . . [and then] alleged that these actions demonstrated a conspiracy . . . .").

[2] Maldonado also asserts claims against Money and Smith in their official capacities. However, Maldonado agrees that the claims against the Officers in their official capacities are duplicative of her claims against Cottonwood, and so agrees that those claims can be dismissed as redundant. (Doc. 9 at 3); *see also Dubose v. City of Hueytown*, 2016 WL 3854241, at *6 (N.D. Ala. July 15, 2016) ("[C]ourts in the Eleventh Circuit routinely dismiss the official capacity claims against the individual defendant when the municipality they represent is also a defendant.").


I), and false arrest (Count II).[3] The Defendants collectively moved the Court to dismiss, arguing that they are immune from Maldonado's claims.[4]

## III.   ANALYSIS

When evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take all facts alleged in the complaint as true and "construe them in the light most favorable to [the plaintiff]." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012) (citation omitted). To survive the motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court must take factual assertions as true, it does not have to take as true legal conclusions that lack further factual support. *Id.* at 678. Nor is it required

---

[3] It is not entirely clear which tort Count II seeks to assert, or against whom. The complaint states that "the Defendant . . . did unlawfully arrest and imprison the Plaintiff." (Doc. 1-1, para. 10). However, false arrest and false imprisonment are separate claims under Alabama law (even though success on the former supports a claim for the latter). *See Upshaw v. McArdle*, 650 So. 2d 875, 878 (Ala. 1994) (explaining how the two claims work); *Ex parte Harris*, 216 So. 3d 1201, 1213–14 (Ala. 2016) (same). The complaint calls Count II one for false *imprisonment*. In the parties' briefing on the motion to dismiss, they all call Count II one for "false *arrest*." The Court here construes the claim as the parties themselves understand it. But it also remains unclear against whom the claim is asserted. The complaint speaks only of a singular, unidentified "Defendant," until the request for a remedy, where the claim seeks punitive damages from all *Defendants*. The parties, again in their briefing, both agree that this claim is asserted against all Defendants, and so the Court understands it as such.

[4] While the Defendants encourage the Court to take judicial notice of an entirely different story, one derived from criminal proceedings in state court, the Defendants misunderstand the Court's ability to do so. "In order for a fact to be judicially noticed under [Fed. R. Evid.] 201(b), indisputability is a prerequisite." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (citation omitted). Maldonado, by telling a different story here, clearly disputes the tale the Officers want told. The Court may "take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related findings." *Id.* (quoting, with approval, *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388–89 (2d Cir. 1992)). The Defendants conflate the *existence* of separate criminal proceedings with the facts *underlying* those proceedings. While the Defendants may be entitled to tell their story later, the Court does not consider it at this early stage.

to take as true "legal conclusion[s] couched as . . . factual allegation." *Id.* (quotations and citation omitted).

First, the Officers and the federal claim. Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Maldonado alleges that when they beat her, the Officers deprived her of her right under the Fourth Amendment to be free from the use of excessive force.

The Officers argue that they are entitled to qualified immunity from Maldonado's § 1983 claim. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotations and citation omitted). Determining whether the Officers are correct takes several steps. First, the Court must determine whether the Officers established that they were acting within the scope of their discretionary authority. *See Cantu v. City of Dothan*, 974 F.3d 1217, 1228 (11th Cir. 2020). Since everyone here agrees that they did, Maldonado must show "that the [O]fficers violated a constitutional right that was clearly established at the time of the alleged violation." *Ingram v. Kubik*, 30 F.4th 1241, 1252 (11th Cir. 2022) (citation omitted). If she cannot do so, the Officers are entitled to qualified immunity.

Because Maldonado alleges excessive force prior to, and during, her arrest, "the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citation omitted). Such freedom "encompasses the

4

plain right to be free from the use of excessive force in the course of an arrest." *Brown v. City of Huntsville*, 608 F.3d 724, 738 (11th Cir. 2010) (quotations and citation omitted). While the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion[,] . . . whether the force is reasonable depends on a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 738–39 (quotations and citations omitted).[5] Reasonable force is judged "from the perspective of a reasonable officer on the scene." *Cantu*, 974 F.3d at 1229 (quotations and citation omitted). The Court weighs "the severity of the crime at issue, whether [Maldonado] pose[d] an immediate threat to the safety of the officers or others, and whether [s]he [was] actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation omitted). The Court "also considers the need for application of force, the

---

[5] Maldonado argues, albeit unclearly, that *any* force was inappropriate because the Officers did *not* have the right to arrest her. Because the Court finds qualified immunity inappropriate on other grounds, the Court does not address that argument. However, it bears noting that Maldonado cannot support a claim for excessive force solely "on the theory that *any* force is excessive if the underlying arrest was illegitimate." *Alston v. Swarbrick*, 954 F.3d 1312, 1320 (11th Cir. 2020) (emphasis in original). "An excessive force claim evokes the Fourth Amendment's protection against the use of an unreasonable quantum of force (i.e., non-de minimis force unreasonably disproportionate to the need) in effecting *an otherwise lawful arrest*." *Bashir v. Rockdale Cnty.*, 445 F.3d 1323, 1332 (11th Cir. 2006) (emphasis added). In this Circuit, "a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Alston*, 954 F.3d at 1319 (emphasis added) (quotations and citation omitted); *see also Williamson v. Mills*, 65 F.3d 155, 158–59 (11th Cir. 1995) (explaining the same). Maldonado does not appear to bring a § 1983 claim for false arrest. She brings a state-law claim for false arrest and reincorporates the allegation of a false arrest into her claim for a § 1983 violation (*see* doc. 1-1, para. 13), but neither she nor the Defendants treat the complaint as containing a § 1983 claim for a false arrest. Nevertheless, the cases she cites suggests "that she is arguing that even if reasonable suspicion or probable cause existed, the force employed was excessive." *Johnson v. Andalusia Police Dep't*, 633 F. Supp. 2d 1289, 1298 (M.D. Ala. 2009). If, upon more facts, a fact-finder determines that there was no probable cause for the underlying arrest, any distinction between a false arrest claim and one for excessive force can be parsed more finely then. If instead, Maldonado wishes to assert a § 1983 claim for a false arrest, she will need to amend her complaint.

relationship between the need and amount of force used, and the extent of the injury inflicted by the arresting officer." *Helm v. Rainbow City*, 989 F.3d 1265, 1273 (11th Cir. 2021) (citation omitted).

But before it can determine whether the Officers' force was reasonable, the Court must answer the precedent question of just how much force Maldonado alleges that the Officers used. The Court first disregards the allegations that the Officers "assaulted and battered [the Plaintiff,]" and "used excessive force and engaged in brutality[.]" (Doc. 1-1, paras. 5, 10, 11, 17). Those assertions are "[t]hreadbare recitals of the elements of" Maldonado's claims, "supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, and are thus insufficient to state those claims. However, Maldonado provides more than that. She explains that as she attempted to leave the town Hall, the Officers "rushed and tackled her in the parking lot," and then "severely beat[]" her as she lay there. (Doc. 1-1, para. 6).

The Defendants object to that last point—they argue that the Court should not consider as conclusory Maldonado's allegation that she was "severely beaten." But Maldonado's allegation is conclusory only when stripped of the complaint's greater context.

The cases the Defendants rely upon makes that distinction clear. For example, in *McClendon v. City of Sumiton*, the court dismissed on qualified immunity grounds claims of excessive force against several officers. 2015 WL 2354187, at *5–6 (N.D. Ala. May 15, 2015). Because the plaintiffs alleged only that the officers "assaulted and used excessive force on [them]" and offered no other specifics, the court disregarded the plaintiffs'

6

"boilerplate language that [was] devoid of any factual allegations." *Id.* The court's conclusion was then rote: with no factual allegations relating to the officers, there was nothing to show they employed unreasonable force, and so they were entitled to qualified immunity. *Id.*

Similarly, in *Hayden v. Broward County*, the court dismissed on qualified immunity grounds an excessive force claim where the plaintiff "offer[ed] only the conclusory allegation that [the d]efendants 'beat' him to the ground, without alleging further facts about . . . the nature or extent of the beating, or the types of injuries [he] suffered." 2013 WL 4786486, at *6 (S.D. Fla. Sept. 6, 2013). Because the plaintiff provided no details, the court could not "evaluate the amount of force used and the extent of injury inflicted in relation to the need for force." *Id.*; *see also Barr v. Gee*, 437 F. App'x 865, 877–78 (11th Cir. 2011) (affirming dismissal for claims of excessive force where the plaintiff "did not describe the 'beating'" nor a defendant's "conduct or the injuries that allegedly resulted from that conduct").

Maldonado offers more context than those plaintiffs did. In her telling, she was tackled to the ground, and then beaten as she lay there. She also describes the myriad injuries that she sustained: serious and permanent injuries to her neck, arms, and shoulders, such that she required hospital care. That context allows the Court to evaluate just how much force the Officers employed. Thus, Maldonado's allegation that she was severely beaten is not a conclusion without factual support, and so the Court does not disregard it here.

And now, against that backdrop, on the question of reasonableness of the force used, all three of the *Graham* factors weigh in Maldonado's favor. First, the complaint does not make clear what crime, if any, the Officers believed Maldonado to have been committing during the incident—no criminal behavior is apparent from the complaint's face. In Maldonado's telling, taken as true, she tried to pay her water bill with coins, asked for help from officials at the Town Hall, exchanged some words with the Officers while leaving, and then turned to leave again. While the Officers themselves cite to Alabama's disorderly conduct statute, that statute bars nothing as anodyne as what Maldonado says she did. *See* ALA. CODE § 13A-11-7. And even if it did, disorderly conduct is a Class C misdemeanor in Alabama—hardly a severe crime that warrants being tackled, beaten, and left with severe and permanent injuries. *Cf. Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002) ("*Graham* establishes generally that more force is appropriate for a more serious offense and less force is appropriate for a less serious one . . . .").

Second, Maldonado (on these facts) did not present any immediate safety threat to the Officers. Nothing indicates that she was armed or hostile—indeed, she was *leaving* the premises. The Officers were not in danger from an unarmed woman walking away from them. Nothing here indicates that she was belligerent, threatening, or aggressive in any capacity.

Lastly, nothing in the complaint indicates that Maldonado was resisting arrest or evading. While she admits she turned to leave, she does not allege that she was under arrest at that time, or that anyone indicated to her that she could not leave. Granted, the complaint does say that "words were exchanged" between Maldonado and the Officers. It is not

implausible that those "words" included a directive to Maldonado, or informed Maldonado that she was under arrest. If so, that she turned to leave *would* indicate an attempt to evade arrest or defy a directive. But those facts are not in the complaint, and at this early stage, the Court construes what *is* in the complaint in favor of Maldonado. *Resnick*, 693 F.3d at 1321–22. Thus, the Court can only determine now that Maldonado was not resisting or otherwise evading arrest, and this factor also weighs in her favor.

All told, Maldonado has pleaded enough to demonstrate that it is plausible that the Officers employed excessive force while effectuating her arrest. No reasonable police officer in this situation would tackle and beat an unarmed, unthreatening woman committing no crime. *Cf. Ingram*, 30 F.4th at 1252 ("Because Ingram was not committing a crime, resisting arrest, or posing an immediate threat to the officers at the time he was body slammed, Kubik used excessive force when apprehending Ingram." (alterations adopted) (quotations and citation omitted)).[6] Thus, Maldonado has sufficiently alleged that her constitutional rights were violated.

But was that right clearly established at the time that the Officers acted? *See Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022) (citation omitted). To start, the Court must resist "defin[ing] clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (citations omitted). So, parsing more finely, the Court asks: in

---

[6] Even if the Officers *could* lawfully seize Maldonado—which the Court does not here decide—the "extent of the injury [they] inflicted was significant enough to confirm the already tenuous relationship between the need for application of force and the amount of force used." *Ingram*, 30 F.4th at 1252 (quotations and citation omitted).

9

August 2019, was it clearly established law that the Constitution forbid the Officers from tackling and beating an unarmed, departing woman committing no obvious crime?

Maldonado can demonstrate that the law was clearly established in one of three ways: she can (1) point to a materially similar decision of the Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court; (2) establish that "a broader, clearly established principle should control the novel facts of the case"; or (3) show that "the case is one of those rare ones that fits within the exception of conduct which so obviously violates the constitution that prior case law is unnecessary." *Powell*, 25 F.4th at 920 (alterations adopted) (quotations and citation omitted).

The Court "conclude[s] that a broader, clearly established principle controls here." *Ingram*, 30 F.4th at 1252 (quotations and citation omitted). Even if the facts Maldonado alleges lack a close fit to pre-existing caselaw, the law makes clear "that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Id.* (citation omitted). So too is it clear "that serious and substantial injuries caused during a suspect's arrest when a suspect is neither resisting an officer's commands nor posing a risk of flight may substantiate an excessive force claim." *Id.* at 1253 (citations omitted).

That principle fits the bill. Nothing in Maldonado's telling indicates that she was committing a crime, nor was a danger to herself, the officers, or anyone else around her. Her complaint gives no indication that she was resisting or flouting any command by the Officers, or any indication that she was posing a flight risk. All her complaint makes clear is that the Officers rushed, tackled, and beat a woman who did nothing to provoke such a drastic use of force.

10

Caselaw here "bars [the Officer's] alleged actions with sufficient clarity to put any reasonable officer on notice that the use of seriously injurious force against a compliant, docile, non-resisting, and unarmed subject like [Maldonado] constituted excessive force." *Ingram*, 30 F.4th at 1254 (quotations and citation omitted). Even though Maldonado does not point to any case that materially *matches* this one, her case nevertheless "falls within the slender category of cases in which the unlawfulness of the conduct is readily apparent even without clarifying caselaw." *Smith v. Mattox*, 127 F.3d 1416, 1420 (11th Cir. 1997). Maldonado pleads enough to survive the Officers' motion to dismiss on this claim.

As to the state law claims, the Officers argue that they are immune as State agents. Alabama law cloaks police officers in State-agent "immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." ALA. CODE § 6-5-338(a).

Everyone here agrees that Smith and Money were performing discretionary functions within the scope of their law enforcement duties. Therefore, for her claims to survive, Maldonado must show that an exception to State-agent immunity applies. Alabama recognizes two: when the United States Constitution, Alabama Constitution, or Alabama laws, rules, or regulations "promulgated for the purpose of regulating the activities of a governmental agency require" non-immunity; or when the agent "acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Ala. State Univ. v. Danley*, 212 So. 3d 112, 130 (Ala. 2016) (quotations and citation omitted).

"The Alabama Supreme Court has largely equated qualified immunity with [State-agent] immunity." *Cantu*, 974 F.3d at 1236 (quotations and citation omitted). "Under both Alabama law and federal law, the core issue is whether a defendant violated clearly established law. . . . [Thus, t]hat means the same facts that establish an officer is not entitled to qualified immunity also establish that [he] is not entitled to [State-agent] immunity." *Id.* (quotations and citations omitted).

So, because the Officers are not entitled to qualified immunity on the facts as currently pleaded, neither are they entitled to State-agent immunity on those same facts. As to the Officers in their individual capacities, Maldonado's claims of assault and battery, and false arrest go forward.

Now for Cottonwood. Against the town, Maldonado brings a claim under 42 U.S.C. § 1983, as well as the same state law claims of assault and battery, and false arrest. The Court starts again with the federal claim. Though the Court here concludes that Maldonado has plausibly alleged constitutional violations by the town's Officers, Cottonwood cannot be held vicariously liable for those violations. *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). Instead, "[i]t is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 386 (1989) (alterations adopted) (quotations and citation omitted).

Maldonado alleges exactly that—she explains that when the Officers beat her, they did so "pursuant to an official policy of [Cottonwood] or pursuant to a custom or practice endorsed or approved by [Cottonwood]." (Doc. 1-1, para. 15). But as the Defendants

correctly note, her allegations go no further than this naked conclusion. Indeed, Maldonado admits that she cannot plead with specificity any conduct by Cottonwood and cannot identify any policy or custom of Cottonwood's that relates to this incident. (Doc. 9 at 14). Instead, she argues, she should be entitled to discovery to find that very conduct or policy.

Maldonado's naked allegation is insufficient. She needed to provide enough facts to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Maldonado does not do so—she provides no facts connecting Cottonwood to the Officers' behavior. Nothing in her complaint gives rise to a plausible claim for relief against Cottonwood. And because her complaint is thus deficient under Rule 8, "[s]he is not entitled to discovery" on this claim. *Ashcroft*, 556 U.S. at 686. Count III as against Cottonwood is due to be dismissed.

Maldonado's state law claims against the town fare better. While "[i]t is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune[,] . . . if the statute does *not* shield the officer, it does not shield the city." *Howard v. City of Atmore*, 887 So. 2d 201, 211 (Ala. 2003) (emphasis added) (citations omitted). On Maldonado's facts, § 6-5-338(a) does not shield the Officers. Neither, then, does it shield Cottonwood.[7]

### IV.   CONCLUSION

Accordingly, and for good cause, it is

---

[7] However, Alabama law bars any claim for punitive damages against municipalities. ALA. CODE § 6-11-26. Maldonado's request for punitive damages against Cottonwood will not go forward.

ORDERED that the Defendants' Motion to Dismiss (doc. 3) is GRANTED to the following extent:

1) Count I is DISMISSED to the extent that it is brought against Defendants Money and Smith in their official capacities; and is DISMISSED to the extent that it seeks punitive damages against Defendant Cottonwood.

2) Count II is DISMISSED to the extent that it is brought against Defendants Money and Smith in their official capacities; and is DISMISSED to the extent that it seeks punitive damages against Defendant Cottonwood.

3) Count III is DISMISSED to the extent that it brings a claim pursuant to 42 U.S.C. § 1985; is DISMISSED to the extent that it is brought against Defendants Money and Smith in their official capacities; and is DISMISSED as against Defendant Cottonwood.

It is further

ORDERED that the Defendants' Motion to Dismiss (doc. 3) is DENIED in all other respects.

DONE this 11th day of July, 2022.

                                           /s/ Emily C. Marks                
                                     EMILY C. MARKS
                                     CHIEF UNITED STATES DISTRICT JUDGE