IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JENNIFER MALDONADO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:21-cv-645-ECM |
| | ) | (WO) |
| TOWN OF COTTONWOOD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION and ORDER

## I. INTRODUCTION

When Plaintiff Jennifer Maldonado ("Maldonado") went to pay her water bill, she found herself, instead, in a confrontation with Defendants Tony Money ("Money") and Jim L. Smith ("Smith") ("Officers"), police officers for Defendant Town of Cottonwood ("Cottonwood") (collectively, the "Defendants"). On the Defendants' motion to dismiss Maldonado's first complaint (doc. 1-1), the Court dismissed some claims and let others go forward. (Doc. 15). Maldonado filed an amended complaint (the operative "complaint") on November 11, 2022. (Doc. 30). The Defendants now ask the Court to dismiss Maldonado's amended complaint for failure to state a claim. (Doc. 33). After review of the motion, briefs, and applicable law, the Court concludes the motion to dismiss is due to be GRANTED in part and DENIED in part.

## II. JURISDICTION AND VENUE

The Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Maldonado's state law

claims pursuant to 28 U.S.C. § 1367(a).  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

### III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  At this stage of the proceedings, "the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Bailey v. Wheeler*, 843 F.3d 473, 478 n.3 (11th Cir. 2016).

The determination of "whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555, 570.  This pleading standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quotations omitted).  Indeed, "[a] pleading that offers labels and conclusions or a

formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations omitted).

## IV.  FACTS AND BACKGROUND[1]

Maldonado is a resident of Cottonwood, Alabama, a town for which both Money and Smith work as police officers.  In August 2019, Maldonado went to the Cottonwood Town Hall to pay her water bill.  Upon arrival, however, she was informed that the coins she brought for payment would not be accepted.  Maldonado initially exited town hall but then returned inside to further exchange words with Officers Money and Smith, who were working at town hall that day.  The Officers told Maldonado to leave or face arrest.

Maldonado again exited town hall and was attempting to leave in her vehicle when Money and Smith followed her outside.  The Officers "continued to yell at Plaintiff as she was opening the door of her car," threatening to arrest her if she did not leave. (Doc. 30 at 2).  As Maldonado opened her car door, she told the Officers that she was exercising her First Amendment Free Speech rights and that arrest would be unlawful.  Money responded, "The First Amendment is not what you people think it is," and he informed Maldonado that she "did not have a right to use 'profane language.'" (*Id.*).

Maldonado then asked Money "where his morals and values were." (*Id.*).  At that point, Maldonado alleges Money and Smith "approached her car," "slammed her to the ground . . . with great force and violence, and placed her under arrest." (*Id.* at 2–3).

---

[1]  This recitation of the facts is based on Maldonado's amended complaint.  The Court recites only the facts pertinent to resolving the Defendants' motion to dismiss.  For purposes of ruling on the motion, the facts alleged in the complaint and reasonable inferences drawn therefrom are set forth in the light most favorable to Maldonado.

Maldonado explains that as she lay on the ground, fearing for her life, the two "grabbed her by the neck, slammed her to the concrete, and even threatened to taser her." (*Id.* at 3). Money and Smith detained Maldonado and incarcerated her in the Houston County Jail on charges of disorderly conduct and resisting arrest.  She was found not guilty of these charges at a jury trial.  Maldonado claims the Officers' use of force left her with injuries to her neck, arms, and shoulders, necessitating hospitalization and medical care, and that she suffered embarrassment, humiliation, reputational damage, and emotional and mental trauma.

Maldonado now sues the Town of Cottonwood, and Money and Smith in their individual and official capacities.  Against all Defendants, she alleges assault and battery (Count I); false arrest (Count II); false imprisonment (Count III); malicious prosecution under Alabama law (Count IV) and federal law (Count V); violations of her civil rights (Count VI);[2] violation of her First Amendment rights (Count VII); Fourth Amendment false arrest (Count VIII); Fourth Amendment unreasonable search and seizure (Count IX);[3] Fourth Amendment denial of medical care (Count X); Fourteenth Amendment equal

---

[2]  In Count VI, Maldonado claims the Defendants violated her civil rights. (Doc. 30 at 8).  The Defendants violated these rights, according to Maldonado, by using "excessive force against her and engag[ing] in brutality in violation of . . . her rights under the Fourth Amendment." (*Id.* at 8–9).  Because Maldonado brings a separate claim pursuant to § 1983 for the Defendants' use of excessive force in violation of the Fourth Amendment (Count XII), Count VI is duplicative.  Therefore, Count VI is due to be dismissed as redundant.

[3]  The complaint labels Count IX for both unreasonable search and seizure and false imprisonment.  In Maldonado's response to the Defendants' motion to dismiss, however, she labels and treats this cause of action as only a "Fourth Amendment unreasonable search and seizure claim." (Doc. 41 at 3, 30).  The Defendants likewise treat Count IX as an unreasonable search and seizure claim alone.  The Court construes the claim as the parties themselves understand it.

protection violation (Count XI); Fourth Amendment excessive force (Count XII); and 42 U.S.C. § 1985 conspiracy to interfere with civil rights (Count XIII).

# V.  DISCUSSION

## A.  Considering External Evidence

The Court initially discusses what it can consider at this stage of the proceedings. The parties ask the Court to consider facts not contained in the complaint.  Ordinarily, at the motion to dismiss stage, courts limit review "to the four corners of the complaint." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).  "If the parties present, and the court considers, evidence outside the pleadings, the motion to dismiss generally must be converted into a motion for summary judgment." *Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. Apr. 3, 2023) (citing FED. R. CIV. P. 12(d)).  The two exceptions to this conversion rule are "(1) the incorporation-by-reference doctrine and (2) judicial notice." *Id.* (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).

Under the doctrine of incorporation by reference, courts may consider evidence attached to a motion to dismiss without turning it into a motion for summary judgment if "(1) 'the plaintiff refers to certain documents in the complaint,' (2) those documents are 'central to the plaintiff's claim,' and (3) the documents' contents are undisputed." *Id.* (citations omitted); *see also Quinette v. Reed*, 805 F. App'x 696, 700 (11th Cir. 2020) (per curiam).  Undisputed, in this context, means that document's or thing's "authenticity is unchallenged." *Baker*, 67 F.4th at 1276; *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

### 1. Town hall surveillance video footage

Both parties ask the Court to consider the video recordings of the events captured on the town hall's surveillance cameras. (Docs. 34-1, 34-2).  The Eleventh Circuit recently published its first precedential opinion addressing "whether the incorporation-by-reference doctrine also applies to the [video] camera footage." *Baker*, 67 F.4th at 1277.  In *Baker*, the Circuit held that "the district court properly considered . . . body camera footage" at the motion to dismiss stage because "the requirements of the incorporation-by-reference doctrine [were] met." *Id.*  First, the plaintiff in *Baker* referenced the body camera footage throughout the complaint. *Id.*  Second, the footage clearly depicted all the relevant conduct central to the plaintiff's claims because "(1) the incident took place in broad daylight, so the area depicted in the footage is well-lit, (2) the footage presents both visual and audio depictions of the events that transpired, and (3) for the most part, the viewer has a good angle of the events with no visual obstructions." *Id.*  And third, the body camera footage was undisputed because the plaintiff did "not challenge the authenticity of the footage." *Id.*; *see also Robinson v. City of Huntsville*; 2022 WL 3867584, at *3 (11th Cir. Aug. 30, 2022) (holding that a party disputing facts "observed in or inferred from the footage" does not make the footage "disputed" because undisputed refers to the thing's authenticity, "not that the evidence is free from any dispute over its content").

Like the parties in *Baker*, no party in this case challenges the authenticity of the town hall surveillance video.  The Court finds, therefore, that the video authentically recorded the events described in and central to Maldonado's complaint on August 26, 2019. *Baker*, 67 F.4th at 1277.  Finally, Maldonado referenced the surveillance camera footage

in her complaint. (Doc. 30 at 11 ("Surveillance video from the Town Hall of Cottonwood on that day unequivocally refutes those accusations.")).  Therefore, the Court incorporates the surveillance video into Maldonado's complaint.

However, just because the Court incorporates the video does not mean that the video overrides all factual allegations in the complaint.  Incorporation does not alter the standard applicable at the motion to dismiss stage.  In *Baker*, for example, the body camera video at times did "not paint the entire picture and . . . contain[ed] ambiguities that [were] subject to interpretation." 67 F.4th at 1277.  These ambiguities occurred for various reasons: "the video was shot from a bad angle, and thus the viewer [could not] see all of the events as they unfold," or "the video contain[ed] a visual representation of what happened but [did] not contain crucial audio." *Id.*  When ambiguities occurred, the court construed them in favor of the plaintiff, as required at the motion to dismiss stage.  Where the video was clear, however, "and obviously contradict[ed] the plaintiff's alleged facts," the court "accept[ed] the video's depiction instead of the complaint's account and view[ed] the facts in the light depicted by the video." *Id.* at 1277–78 (first citing *Scott v. Harris*, 550 U.S. 372, 381 (2007); then citing *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010)).

Accordingly, in this case, where the town hall surveillance video footage clearly contradicts Maldonado's complaint, the Court "view[s] the facts in the light depicted by the videotape." *Scott*, 550 U.S. at 380–81.  But where the video is unclear, the Court construes it in the light most favorable to the plaintiff. *Id.*

### 2. Criminal proceeding documents

The parties also ask the Court to incorporate versions of the events derived from Maldonado's state court criminal proceedings.  The only criminal proceeding documents referred to in Maldonado's complaint are the criminal complaints filed against her for disorderly conduct and resisting arrest. (Docs. 34-3, 34-4).  Her complaint does not refer to the transcript of her trial on these charges. (Docs. 41-2, 44-1).  Therefore, the Court does not incorporate the trial transcript.  But as to the criminal complaints filed against her, the Court can consider their contents at this stage by incorporation because Maldonado refers to the criminal complaints in her complaint. (*See* Doc. 30 at 9).  Additionally, the criminal complaints are "central to the plaintiff's claim[s], and of undisputed authenticity." *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020).

The Defendants maintain that because the Court incorporates the criminal complaints, it "must—as *Crenshaw* and *Dorminey* hold—credit the contents of the exhibit over the complaint's factual allegations." (Doc. 34 at 19).  However, *Crenshaw v. Lister*, 556 F.3d 1283 (11th Cir. 2009), and *J.I.W. by and through T.W. v. Dorminey*, 2022 WL 17351654 (11th Cir. Dec. 1, 2022), do not entirely stand for that proposition.  In *Crenshaw*, the court indeed credited the facts recited in police reports over the facts recited in the complaint. 556 F.3d at 1292.  However, the circuit clarified that it was because specific facts contained in the reports "refute[d the plaintiff's] *conclusory and speculative* allegation about what the officers saw." *Id.* (emphasis added); *see also Gill v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019) ("[W]hen exhibits attached to a complaint contradict the general and conclusory allegations of the pleading, the exhibits govern."); *Griffin Indus.,*

*Inc. v. Irvin*, 496 F.3d 1189, 1206–07 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations.").  The classic example of when a court takes the account in an attached document over conclusory and speculative allegations in a complaint "is when a plaintiff attaches a document to his complaint but his allegations about what the document is or says contradict the document itself." *Gill*, 941 F.3d at 514 (citation omitted).

Under *Crenshaw*, then, the Court accepts the facts in the criminal complaints over Maldonado's factual allegations only where her complaint's "conclusory and speculative allegation[s]" contradict the account in the criminal complaints. *Crenshaw*, 556 F.3d at 1292.  When, on the other hand, specific factual allegations in Maldonado's complaint contradict facts stated in a criminal complaint, the Court must construe this ambiguity in Maldonado's favor, and take the well-pled allegations of fact as true. *See Bailey*, 843 F.3d at 478 n.3; *see also Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) (crediting allegations in a complaint over police reports attached to the complaint because the allegations were specific and well-pled); *Assoc. Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) (accepting as true "the well pleaded allegations of fact," but not "conclusory allegation[s] . . . , especially when such conclusion[s] are contradicted by facts disclosed by a document appended to the complaint").[4]

---

[4] Fifth Circuit cases decided before October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

In *Dorminey*, the court credited witness statements over factual allegations in the complaint because surveillance video unambiguously "confirm[ed] the accuracy of the witness statements rather than the allegations in the complaint." 2022 WL 17351654, at *6. The court relied on the witness statements, in part, due to the clear depiction of the events in the video, not merely because the witness statements contradicted the facts alleged in the complaint.  The Court, therefore, applies this standard when a dispute arises between the criminal complaints and Maldonado's factual allegations.  If the town hall surveillance video "confirms the accuracy of" the criminal complaints "rather than the allegations in [Maldonado's] complaint," then the Court will credit the criminal complaints over Maldonado's version of the facts. *Id.*[5]  But where the video is unclear, the Court accepts the well-pled facts of Maldonado's complaint as true. *See Bailey*, 843 F.3d at 478 n.3; *see also Saunders*, 766 F.3d at 1270.

## B.  Previously Dismissed Claims

Maldonado claims the Defendants violated § 1985 by conspiring to interfere with her civil rights (Count XIII).  She also claims the Town of Cottonwood is liable for the Officers' use of excessive force against her (Count XII).  However, on the first motion to dismiss, the Court dismissed a § 1985 conspiracy claim against the Defendants, as well as a Fourth Amendment excessive force claim against Cottonwood. (Doc. 15).

The Court's order granting a motion to dismiss under Rule 12(b)(6) was a "judgment on the merits." *NAACP v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990) (quoting *Federated*

---

[5]  While the Court recognizes that *Dorminey* is an unpublished opinion, the Court finds its analysis persuasive.

*Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981)).  Therefore, Count XII as to Cottonwood and Count XIII as to all Defendants have already been dismissed with prejudice, and the Defendants' motion to dismiss these renewed causes of action is due to be granted.  *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) (finding "an 'adjudication upon the merits' is the opposite of a 'dismissal without prejudice'"); *Eiber Radiology, Inc. v. Toshibsa Am. Med. Sys., Inc.*, 673 F. App'x 925, 929 (11th Cir. 2016) (per curiam) ("Thus, under the federal procedural rules, the district court need not provide specific justification for dismissing with prejudice, as this is the default effect of a proper Rule 12(b)(6) dismissal.").

### C.  Federal Claims Against Money and Smith

Maldonado brings claims against the Officers for violating her federal rights pursuant to § 1983.  Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

The Officers maintain that they are entitled to qualified immunity from Maldonado's § 1983 claims. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted).  Determining whether qualified immunity applies takes several steps.  First, the Court must determine whether the Officers established that they were acting within the scope of their discretionary authority. *See Cantu v. City of Dothan*, 974 F.3d 1217, 1228 (11th Cir. 2020).

Since the parties agree that they have so established, Maldonado must show "that the officers violated a constitutional right." *Ingram v. Kubik*, 30 F.4th 1241, 1250 (11th Cir. 2022).  If she cannot do so, then the Officers are entitled to qualified immunity.

Even if Maldonado demonstrates the Officers violated a federal right, she must show that such a right was clearly established at the time the Officers acted. *See Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022).  This prong of qualified immunity analysis "asks whether the preexisting law was so clear that, given the specific facts facing a particular officer, one must say that 'every reasonable officer would have understood that what he is doing violates' the Constitutional right at issue." *Gates v. Khokhar*, 884 F.3d 1290, 1302 (11th Cir. 2018) (citation omitted).  The Court must resist "defin[ing] clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (citations omitted).  Maldonado can demonstrate that the law was clearly established in one of three ways:  she can (1) point to a materially similar decision of the U.S. Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court; (2) establish that "'a broader, clearly established principle should control the novel facts' of the case"; or (3) show that "the case is one of those rare ones that 'fits within the exception of conduct which so obviously violates the constitution that prior case law is unnecessary.'" *Powell*, 25 F.4th at 920 (alteration adopted) (citation omitted).

### 1.  Official capacity claims

Maldonado asserts claims against Money and Smith in their official capacities. However, as the Court concluded in its previous order, claims against the Officers in their official capacities are duplicative of claims against Cottonwood, and so the official capacity

claims against them are due to be dismissed as redundant. (Doc. 41 at 27); (Doc. 15 at 2 n.2); *see also Dubose v. City of Hueytown*, 2016 WL 3854241, at *6 (N.D. Ala. July 15, 2016) ("[C]ourts in the Eleventh Circuit routinely dismiss the official capacity claims against the individual defendant when the municipality they represent is also a defendant.").  Maldonado concedes that all "official capacity claims" against Money and Smith "are due to be dismissed," (doc. 41 at 28), and so the Court does so.

## 2. Probable cause

Many of Maldonado's claims against the Defendants, to succeed, would necessitate a finding of no probable cause to arrest her.  As an initial matter then, the Court addresses whether the Officers had arguable probable cause to arrest Maldonado.  The only ground for probable cause argued by the Defendants is third degree criminal trespass.[6]

The Supreme Court has clarified that "probable cause speaks to the objective reasonableness of an arrest[—]its absence will . . . generally provide weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019).  In the § 1983 context, "a police officer may be entitled to qualified immunity even if there was no actual probable cause for an arrest, so long as there was *arguable* probable cause." *Windham v. City of Fairhope*, 597 F. App'x 1068, 1071 (11th Cir. 2015) (per curiam) (emphasis in original)

---

[6] "Because probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." *District of Columbia v. Wesby*, 138 S. Ct. 577, 584 n.2 (2018).  Even though Maldonado was booked for disorderly conduct and resisting arrest, third degree criminal trespass is the only offense the Defendants discuss in their brief for probable cause.  Accordingly, the Court limits its analysis to whether there was arguable probable cause for criminal trespass. *See id.*

(citing *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003)).  Arguable probable cause exists when "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004), *abrogated in part on other grounds by Nieves*, 139 S. Ct. 1715.

To determine whether the facts as alleged demonstrate arguable probable cause to arrest Maldonado for third degree criminal trespass, the Court must examine the statutory text.  The Alabama third degree criminal trespass statute provides: "A person is guilty of criminal trespass in the third degree when [s]he knowingly enters or remains unlawfully in or upon premises." ALA. CODE § 13A-7-4(a).  The statute provides a definition for when a person "enters or remains unlawfully" in a premises open to the public, such as Cottonwood Town Hall:  a person commits criminal trespass if she "enters or remains in or upon premises which are at the time open to the public" in defiance of "a lawful order not to enter or remain, personally communicated to [her] by the owner of such premises or other authorized person." ALA. CODE § 13A-7-1(3).

The Officers contend that Maldonado's complaint, the video, and the criminal complaints demonstrate that Maldonado refused to leave the premises after being twice ordered to do so.  The parties do not dispute whether the Officers were authorized to order Maldonado to leave town hall.  The issue is, rather, whether the Officers ordered Maldonado to leave before she re-entered or remained on the premises.  Neither the video, Maldonado's complaint, nor the criminal complaints clearly support the Officers' version of the timing of events.  The surveillance video is not accompanied by audio and does not

reveal exactly when the Officers ordered Maldonado to leave. *See Baker*, 67 F.4th at 1277 (construing ambiguities in the video in the plaintiff's favor because "the video contain[ed] a visual representation of what happened but [did] not contain crucial audio").  Had they ordered her to leave before she re-entered the building, then there may have been arguable probable cause for criminal trespass.  However, because the video does not unambiguously portray this course of events, the Court does not consider the video as support for arguable probable cause to arrest Maldonado for criminal trespass. *See Scott*, 550 U.S. at 380–81; *see also Baker*, 67 F.4th at 1277-78.

The criminal complaints also fail to clarify when Maldonado was ordered to leave or how the order corresponded with her re-entering or remaining on the premises.  The complaints state that "Money told the suspect to leave, [and s]he exited the front door but continued screaming." (Doc. 34-3 at 2, 34-4 at 2).  As Maldonado cursed at the Officers, she "entered her vehicle and began to close the door, [and then] she suddenly opened the door." (*Id.*).  Money again told her to leave.  The criminal complaint then states that Maldonado "began to advance upon" Money, at which point he "told the suspect she was under arrest for disorderly conduct." (*Id.*).  The surveillance video belies this point, however.  The video shows that Maldonado remained standing at or in her car while Money was the one that advanced upon her. (Doc. 33-2 at 00:43).

At this stage, taking the facts alleged in the complaint in the light most favorable to the plaintiff, the Court finds allegations sufficient to show there was no arguable probable cause to arrest Maldonado.  Whether the Officers, in fact, ordered Maldonado to vacate the premises prior to her re-entering or remaining at town hall remains to be seen.  At this

juncture, the Court finds that no reasonable officer could have found arguable probable cause to arrest her for criminal trespass.

The complaint alleges that from the moment the Officers ordered her to leave, Maldonado left the premises, albeit "exchanging words" with the Officers in the process. The criminal complaints confirm this allegation, stating that immediately after she was first ordered to leave, Maldonado "exited the front door but continued screaming." (Doc. 34-3 at 2, 34-4 at 2). While the video indeed shows Maldonado re-opening her car door, as the criminal complaints state, it is unclear in both the video and the criminal complaints as to the timing of this action with respect to the commands to leave the premises. The Court construes this ambiguity in Maldonado's favor. *See Saunders*, 766 F.3d at 1270 (crediting allegations in a complaint over police reports attached to the complaint because the allegations were specific and well-pled, while the police reports were silent on those allegations). Under Maldonado's version of events, no reasonable officer could find that this type of conduct demonstrates that she was either entering or refusing to leave a public premises over a lawful order to do so. *See* ALA. CODE § 13A-7-1(3). Therefore, the Court concludes at this stage that Maldonado has alleged sufficient facts to show a lack of arguable probable cause to arrest her for criminal trespass.

### 3.  Count V – Malicious prosecution

Maldonado claims the Officers violated her Fourth Amendment rights by engaging in malicious prosecution against her. The Officers assert qualified immunity because the complaint does not plausibly allege either that Money or Smith perjured himself or that a

reasonably well-trained officer would have known that his affidavit failed to establish probable cause.

A plaintiff asserting a federal malicious prosecution claim must allege facts that show (1) "the defendant[s] violated [her] Fourth Amendment right to be free from seizures pursuant to legal process," and (2) that "the criminal proceedings against [her] terminated in [her] favor." *Luke*, 975 F.3d at 1144. The Officers do not contest that Maldonado's criminal proceedings terminated in her favor, and so the Court analyzes whether she plausibly alleges the first element of a malicious prosecution claim. To establish that a seizure was done without legal process, a plaintiff must prove (1) that "the legal process justifying [her] seizure was constitutionally infirm" and (2) that her "seizure would not otherwise be justified without legal process." *Id.* (citation omitted).[7]

Maldonado proceeds on the theory that the process justifying her seizure was constitutionally infirm because the warrant in her criminal proceedings was based on false and embellished information. An arrest warrant is constitutionally infirm in this scenario when either (1) "the officer who applied for the warrant should have known that his application failed to establish probable cause," or (2) "an official, including an individual who did not apply for the warrant, intentionally or recklessly made misstatements or

---

[7] There are different standards for a Fourth Amendment malicious prosecution claim and a Fourth Amendment false arrest claim. A claim of false arrest "concerns seizures without legal process, such as warrantless arrests." *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020). A false arrest claim, therefore, "accrue[s] when either the seizure ends or the plaintiff is held pursuant to legal process." *Id.* A malicious prosecution claim, on the other hand, comes into play when the legal process itself occurs, either following a warrant-based seizure, "arraignment, indictment, or probable-cause hearing." *Id.* In analyzing a malicious prosecution claim, accordingly, courts look to whether the legal process itself went wrong, whereas a false arrest claim deals with events prior to legal process. *Id.*

omissions necessary to support the warrant." *See Williams v. Aguirre*, 965 F.3d 1147, 1165 (11th Cir. 2020).  In other words, "there are two theories by which malicious prosecution can be established:  the officer perjured himself or a reasonably well-trained officer would have known that his affidavit failed to establish probable cause and the officer should not have applied for the warrant." *Harris v. City of Ozark*, 2022 WL 37017, at *4 (M.D. Ala. Jan. 4, 2022) (citing *Carter v. Gore*, 557 F. App'x 904, 908–09 (11th Cir. 2014) (per curiam)).

In *Carter*, the plaintiff alleged the defendant officer "caused a warrant to be issued for [plaintiff's] arrest . . . without probable cause[, and plaintiff] was arrested, imprisoned and maliciously prosecuted." 557 F. App'x at 906 (emphasis omitted).[8]  As here, the plaintiff proceeded on the theory that the officer committed malicious prosecution through perjury, alleging the officer "fabricated evidence," but without "specif[ying] what evidence was presented to the magistrate that was supposedly fabricated." *Id.* at 910.  The Eleventh Circuit rejected this allegation as conclusory. *Id.*

In this case, Maldonado proceeds on the theory that the Officers perjured themselves by intentionally or recklessly fabricating evidence necessary to support the warrant for disorderly conduct and resisting arrest. (Doc. 41 at 33); *see Williams*, 965 F.3d at 1163.  Maldonado alleges that charging her in a judicial proceeding with disorderly conduct and resisting arrest was done "with malice" because "the proceeding was retaliatory, unjust, unwarranted, and motivated by spite." (Doc. 30 at 7).  Like the complaint in *Carter*,

---

[8]  While the Court recognizes that *Carter* is an unpublished opinion, the Court finds its analysis persuasive.

however, Maldonado's complaint fails to specify "what evidence was presented to the magistrate that was supposedly fabricated." *See Carter*, 557 App'x at 910. These allegations are therefore conclusory and not sufficient to show that either officer perjured himself. *See id.* Maldonado fails to plausibly allege that the arrest warrant underlying her criminal proceedings was constitutionally infirm. Accordingly, Maldonado fails to allege facts sufficient to show a constitutional violation, and the Officers are entitled to qualified immunity on the malicious prosecution claim. *See Edger v. McCabe*, --- F.4th ----, 2023 WL 6225140, at *3 (11th Cir. Sept. 26, 2023) (noting that the qualified immunity "test is conjunctive, and if a plaintiff fails either prong of the . . . analysis, h[er] claim is barred").

### 4. Count VII – Retaliatory arrest

Maldonado alleges the Officers violated her First Amendment rights by retaliating against her for the exercise of protected speech. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I. This Amendment protects both "the affirmative right to speak" and "the right to be free from retaliation by a public official for the exercise of that right." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1288 (11th Cir. 2019) (citation omitted).

To assert a First Amendment retaliation claim, a plaintiff must allege (1) "she engaged in constitutionally protected speech," (2) "the defendant's retaliatory conduct adversely affected that protected speech and right to petition," and (3) "a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech." *Id.* at 1289. To establish the causal connection element, if the plaintiff alleges "the governmental defendant has utilized the legal system to arrest or prosecute the

plaintiff," then courts "require the plaintiff to plead and prove an absence of probable cause as to the challenged retaliatory arrest or prosecution." *Id.* (citing *Nieves*, 139 S. Ct. at 1726). Existence of probable cause vitiates a First Amendment retaliation claim.

Maldonado's complaint satisfies the requirements for a retaliation claim.  First, she engaged in protected speech.  She allegedly told the Officers that "she was exercising her right to free speech," and said "Fuck you." (Doc. 30 at 2, 10).  Directly after she made these statements, according to the complaint, the Officers arrested Maldonado.  The Officers do not argue that these statements rose to the level of "fighting words," an exception to First Amendment protection. *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 573 (1942) (holding "fighting words" are not protected by the First Amendment).   Therefore, Maldonado had a constitutional right to do make both statements. *See, e.g.*, *Merenda v. Tabor*, 506 F. App'x 862, 864, 868 (11th Cir. 2013) (per curiam) (holding that telling an officer "You're a fucking asshole" does "not amount to fighting words, so that speech [is] protected").[9]

Second, the Officer's alleged retaliation "adversely affected" Maldonado's exercise of her constitutional rights.  Arresting a person for exercising First Amendment rights "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *DeMartini*, 942 F.3d at 1289 n.8 (citation omitted).

Finally, as discussed, taking the facts at this stage in the light most favorable to the plaintiff, the Court finds facts sufficiently alleged to show no arguable probable cause to

---

[9]  While the Court recognizes that *Merenda* is an unpublished opinion, the Court finds its analysis persuasive.

arrest Maldonado. *See supra* Part V.C.2.  Maldonado alleges the Officers arrested her because she informed them of her First Amendment rights and because she cursed at them as she compliantly left town hall.  Sufficiently pleading facts that show an arrest based on no arguable probable cause satisfies Maldonado's pleading requirement for a causal connection. *DeMartini*, 942 F.3d at 1289; *see also Nieves*, 139 S. Ct. at 1724 (holding the absence of probable cause "generally provide weighty evidence that the officer's animus caused the arrest").  The Court finds, therefore, that she sufficiently alleges a violation of her First Amendment right to be free from retaliatory arrest.

Because the Court concludes at this stage that the Officers lacked arguable probable cause to arrest Maldonado for third degree criminal trespass and that Maldonado has sufficiently alleged the remaining elements of a retaliatory arrest claim, the Court concludes Maldonado has plausibly alleged that the Officers violated her clearly established right to be free from retaliatory arrest. *See Patel v. Lanier Cnty.*, 969 F.3d 1173, 1184 (11th Cir. 2020).  The Officers are therefore not entitled to dismissal on Maldonado's retaliatory arrest claim at this stage.

### 5.  **Count VIII – False arrest**

Maldonado claims the Officers violated the Fourth Amendment by arresting her without a warrant and without arguable probable cause. "A warrantless arrest without probable cause violates the Constitution." *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990).  To succeed on a false arrest claim, Maldonado must allege facts demonstrating, if true, "(1) a lack of probable cause and (2) an arrest." *Richmond v. Badia*, 47 F.4th 1172,

1180 (11th Cir. 2022).  No party challenges that an arrest occurred in this case, and so the Court discusses only whether there was probable cause.

The Officers assert qualified immunity against Maldonado's false arrest claim because they had arguable probable cause to arrest her for criminal trespass.  But as the Court already found, the facts alleged sufficiently demonstrate that the Officers did not have arguable probable cause to arrest Maldonado for criminal trespass. *See supra* Part V.C.2.  Therefore, Maldonado has sufficiently alleged a violation of her Fourth Amendment right to be free from false arrest based on no arguable probable cause.

Because the Court concludes at this stage that the Officers lacked arguable probable cause to arrest Maldonado for criminal trespass, it also concludes that Maldonado's complaint sufficiently alleges a violation of her clearly established right to be free from false arrest. *See Patel*, 969 F.3d at 1184; *see also Edger*, 2023 WL 6225140, at *3 (noting that "having 'arguable probable cause' is just another way of saying that the law is not 'clearly established'" (citing *Garcia v. Casey*, 75 F.4th 1176, 1187 (11th Cir. 2023))).  The Court, therefore, concludes that the Officers are not entitled to dismissal on Maldonado's false arrest claim.

### 6.  Counts IX & X – Unreasonable search and seizure & Denial of medical care

In her response to the Defendants' motion to dismiss her Fourth Amendment unreasonable search and seizure claim (Count IX), Maldonado asserts that she alleged that the Officers searched and seized her car during her arrest and that "[c]ase law cited elsewhere in this Memorandum indicates that this supports a 1983 claim for unlawful

search and seizure." (Doc. 41 at 30).   Maldonado's failure to provide any analysis, meaningful or otherwise, regarding this claim operates as an abandonment of it.   Regarding her Fourth Amendment denial of medical care claim (Count X), Maldonado concedes that "case law in the Eleventh Circuit appears to preclude relief under the Fourth Amendment." (Doc. 41 at 36).   The Court finds that this concession supports a dismissal of this claim. Accordingly, Counts IX and X are due to be dismissed.[10]

### 7.  Count XI – Equal protection

Maldonado contends that the Officers violated the Fourteenth Amendment's Equal Protection Clause by selectively enforcing the law against her.   A selective enforcement claim is "governed by 'ordinary equal protection standards,' and require[s] a showing of both discriminatory effect and discriminatory purpose." *B.T. by and through Jackson v. Battle*, 2021 WL 4147087, at *3 (11th Cir. Sept. 13, 2021) (per curiam) (quoting *United States v. Armstrong*, 517 U.S. 456, 465 (1996)).   Maldonado's complaint, however, does not allege facts demonstrating that the Officers arrested her based on membership in a protected class, nor that they "intentionally treated [her] differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Maldonado states, rather, that "the claim is not due to be dismissed, and Defendant officers are not entitled to qualified immunity." (Doc. 41 at 35).   She offers no argument

---

[10] Maldonado alternatively asks the Court for leave "to amend her Complaint such as to more clearly and sufficiently plead said claim[s]." (Doc. 41 at 30, 36).  The Court declines to grant such leave where, as here, the request is made in passing, in a response brief, and the Plaintiff has already amended her complaint.

or analysis in support of this conclusory assertion.  The burden is on the parties to formulate arguments and present law in support of their positions.  *See Rd. Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994).  Maldonado fails to do so.

Furthermore, the Court cannot square her request for "further discovery"—to support her claim "that selective enforcement was based on Plaintiff's gender, perceived race, or economic status"—with the particularity requirement of Federal Rule of Civil Procedure 9(b). (Doc. 41 at 35).  If the Court gives Maldonado "a ticket to the discovery process without identifying a single claim" based on factual support, then it effectively gives her a ticket to "an unlimited fishing expedition." *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (citations omitted); *see also Brannan for Estate of Goodman v. West*, 2018 WL 1440835, at *4 (S.D. Ala. Mar. 22, 2018) ("[F]ederal courts decline to impose the considerable burden and expense of discovery on defendants against whom plaintiffs have no concrete factual allegations but only a desire to embark on a fishing expedition in search of facts that might inform their speculative claims.").  Nowhere in Maldonado's complaint does she identify a fact supporting her conclusion that the Officers selectively enforced the law based on "gender, perceived race, or economic status." (Doc. 41 at 35).  The Court declines to grant a fishing expedition on a claim which lacks factual support. *See Atkins*, 470 F.3d at 1359.  Maldonado's Fourteenth Amendment equal protection claim against all Defendants is therefore due to be dismissed.

### 8.  Count XII - Excessive force

#### a.  Violation of a federal right

Maldonado claims the Officers used excessive force against her during her arrest. Because Maldonado alleges excessive force prior to, and during, her arrest, "the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).  Such freedom "encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Brown v. City of Huntsville*, 608 F.3d 724, 737 (11th Cir. 2010) (citation omitted).  While the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion[,] . . . whether the force is reasonable depends on 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id.* at 737–38 (citations omitted).  Reasonable force is judged "from the perspective of 'a reasonable officer on the scene.'" *Cantu*, 974 F.3d at 1229 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  The Court weighs (1) "the severity of the crime at issue," (2) whether Maldonado posed "an immediate threat to the safety of the officers or others," and (3) whether she was "actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  The Court also considers (4) "the need for application of force," (5) "the relationship between the need and amount of force used," and (6) "the extent of the injury inflicted by the arresting officer." *Helm v. Rainbow City*, 989 F.3d 1265, 1273 (11th Cir. 2021).

Before the Court can determine whether the force used was reasonable, it must answer the precedent question of just how much force Maldonado alleges the Officers used.

The Court disregards conclusory allegations that the force used was "unlawful," "unjustified," "excessive," and "unnecessary." (Doc. 30, at 18). These assertions are "[t]hreadbare recitals of the elements of" Maldonado's claims, "supported by mere conclusory statements," and are thus insufficient to state those claims. *Iqbal*, 556 U.S. at 678. However, Maldonado provides more than that. She explains that as she attempted to leave town hall, the Officers "rushed and tackled her," then "grabbed her by the neck, [and] slammed her to the concrete." (Doc. 30 at 3, 18).

The Officers ask the Court to accept the depiction of the events in the surveillance video and the criminal complaints to find the use of force constitutionally reasonable. (Doc. 34 at 29). The video, according to the Defendants, shows "Maldonado pull away from Chief Money" and that "neither officer used force against Maldonado before Chief Money initiated the arrest." (*Id.* at 29–30). They maintain that because the video demonstrates how Maldonado was noncompliant with the Officers, the purportedly limited force used in constraining her was reasonable. Likewise, the Officers claim the criminal complaints, which state that as Money "grasped her arm[,] she pulled away," directly contradict Maldonado's factual allegations. (Doc. 34-3).

However, neither the surveillance video nor the criminal complaints clearly depict the arrest and use of force. The video is without sound, and so the moment Money initiates the arrest is unclear. While Money clearly approaches Maldonado, who stood outside her vehicle, her vehicle obscures any view of their interaction. It is unclear from the video whether Maldonado pulled away from Money. The Court accepts the video's depiction of the scene instead of that in the complaint only if there is no ambiguity in the video. *Cantrell*

26

*v. McClure*, 805 F. App'x 817, 819 n.2 (11th Cir. 2020) (per curiam).  Given the ambiguity as to the events immediately preceding and during the alleged use of force here, the Court looks to the version of events described in the complaint and construes the facts in the light most favorable to Maldonado. *See id.*

Similarly, the criminal complaints do not contradict the course of events as alleged in Maldonado's complaint. *Crenshaw*, 556 F.3d at 1292.  Maldonado's complaint contains specific factual allegations as to the course of events leading up to and during the arrest. At this stage, the dispute over which factual account must be credited is construed in the light most favorable to Maldonado. *See Saunders*, 766 F.3d at 1270.  The Court concludes that Maldonado's complaint contains a well-pled factual account of the force used.

Turning then to the complaint, Maldonado alleges that she "was in fact attempting to comply with the Defendant officers' instruction to leave Town Hall when Defendant officers rushed and tackled her, only then placing her under arrest." (Doc. 30 at 18).  She also describes the myriad injuries that she sustained:  injuries to "her neck, arms, and shoulders, necessitating hospital and medical care, emotional trauma, and mental anguish." (*Id.* at 4).  Within that factual context, the Court evaluates the force allegedly employed by the Officers.

On the question of the reasonableness of the force used, the *Graham* factors weigh in Maldonado's favor.  The Officers offer three theories of the crimes justifying arrest: disorderly conduct, resisting arrest, or criminal trespass.  In Maldonado's telling, taken as true, she tried to pay her water bill with coins, asked for help from officials at the town hall, exchanged words with the Officers while leaving, returned inside town hall, and then

turned to leave once more in her car.  As the video shows, Maldonado opened her car door and stood by her car yelling at the officers.   At that point, the officers approached Maldonado and purportedly began using force.  Even if Maldonado's actions rose to the level of disorderly conduct, resisting arrest, or criminal trespass, ALA. CODE §§ 13A-11-7, 13A-10-41, 13A-7-4(a), these crimes are all misdemeanors in Alabama—hardly serious crimes that would warrant being grabbed by the neck, tackled, and beaten. *Cf. Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002) ("Since *Graham* establishes generally that more force is appropriate for a more serious offense and less force is appropriate for a less serious one, this factor strongly weighs in favor of [plaintiff].").  Moreover, as will be discussed below, under the facts alleged by Maldonado, she did not resist arrest.

On the facts alleged in the complaint, Maldonado did not present an immediate safety threat to the officers or bystanders.  The facts alleged do not show that she was armed or physically threatening—indeed, the surveillance video shows she was *leaving* the premises and was at her car when the Officers approached her.  Neither the facts alleged in the complaint nor clearly visible video footage indicates that Maldonado was threatening or aggressive in such a way that the level of alleged force used against her can be found reasonable at this stage of the case.

Neither the facts alleged in the complaint nor clearly visible video footage show that Maldonado was resisting or evading arrest.  While Maldonado admits she turned to leave while exchanging words with the Officers, she does not allege that an officer informed her that she was under arrest, nor that the Officers indicated she could not leave.  In fact, she claims she was complying with the Officers' order *to leave*.  It is possible that the "words"

28

exchanged between Maldonado and the Officers included a directive that she was under arrest or not free to leave.  If so, that she turned to leave *would* indicate an attempt to evade arrest or defy a directive.  But those facts are not in the complaint, nor can they be heard or seen on the surveillance video.  At this early stage, the Court construes what *is* in the complaint and clearly on the video in favor of Maldonado. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).  Thus, the Court cannot, at this point, determine whether Maldonado was resisting or otherwise evading arrest.

All told, Maldonado has pled sufficient facts to plausibly allege that the Officers used excessive force while effectuating her arrest. *Cf. Ingram*, 30 F.4th at 1252 ("Because [plaintiff] was not committing a crime, resisting arrest, or posing an immediate threat to the officers at the time he was [body slammed], [the defendant] used excessive force when apprehending [him]." (citation omitted)).  Even if the Officers *could* have lawfully seized Maldonado, the "'extent of the injury [they allegedly] inflicted' was significant enough to confirm the already tenuous nature of the relationship between 'the need for application of force' and 'the amount of force used.'" *Id.* (citation omitted); *Lee*, 284 F.3d at 1198 ("[M]ore force is appropriate for a more serious offense . . . .").  Thus, Maldonado has sufficiently alleged that her Fourth Amendment right was violated.

### b. Clearly established law

The Court next asks whether Maldonado's right was clearly established at the time that the Officers acted.  Under Maldonado's version of events, the Officers escalated the confrontation, grabbed her neck, slammed her to the ground, and threatened to taser her without provocation.  The surveillance video is insufficient to wholly discredit

Maldonado's account.   To avoid defining "clearly established law at a high level of generality," *Ashcroft*, 563 U.S. at 742, the Court asks whether it was clearly established, in August 2019, that the Fourth Amendment prohibits the actions taken by the Officers as alleged by Maldonado.   The Court "conclude[s] 'that a broader, clearly established principle' controls here." *Ingram*, 30 F.4th at 1252 (citation omitted).   Even if the facts Maldonado alleges lack a close fit to pre-existing caselaw, the law makes clear "that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Id.* (citation omitted).   So too is it clear "that serious and substantial injuries caused during a suspect's arrest when a suspect is neither resisting an officer's commands nor posing a risk of flight may substantiate an excessive force claim." *Id.* at 1253 (citation omitted).

That principle fits the bill.   Nothing in Maldonado's complaint indicates that she was committing a serious crime or presented a danger to herself, the officers, or bystanders. She alleges in her complaint that she was complying with the Officers' instructions and that the use of force was unprovoked.   While the Officers claim she pulled away from Money, this account does not clearly appear in the video or in the complaint.

Caselaw here "'bars [the Officers'] alleged actions with sufficient clarity to put any reasonable officer on notice' that the use of seriously injurious force against a compliant, docile, non-resisting, and unarmed subject like [Maldonado] 'constituted excessive force.'" *Id.* at 1254 (citation omitted).   Even though Maldonado does not point to any case that materially *matches* this one, her case nonetheless "falls within the slender category of cases in which the unlawfulness of the conduct is readily apparent even without clarifying

30

caselaw." *Smith v. Mattox*, 127 F.3d 1416, 1420 (11th Cir. 1997).  At this stage, therefore, the Officers are not entitled to qualified immunity on Maldonado's Fourth Amendment excessive force claim.

### D.  State Law Claims Against Money and Smith

#### 1.  Count I – Assault and battery

Maldonado brings a claim for assault and battery under Alabama law.  The Officers contend that Maldonado cannot sustain this claim because the complaint does not plausibly allege that unreasonable force was used against her in violation of the Fourth Amendment. Because the Alabama Supreme Court holds that a Fourth Amendment excessive force claim raises "identical" issues to those raise by an Alabama assault and battery claim, the Court's conclusion as to Maldonado's Fourth Amendment excessive force claim controls here. *Walker v. City of Huntsville*, 62 So. 3d 474, 494 (Ala. 2010).  Because Maldonado has sufficiently alleged excessive force in violation of the Fourth Amendment, she also sufficiently alleges an Alabama assault and battery claim. *See supra* Part V.C.8.

The Officers further argue that they are immune as state agents.  Alabama law cloaks police officers in State-agent "immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." ALA. CODE § 6-5-338(a).  Maldonado does not dispute that Smith and Money were performing discretionary functions within the scope of their law enforcement duties.  Therefore, for her claim to survive, Maldonado must show that an exception to State-agent immunity applies.  Alabama recognizes two:  (1) when the U.S. Constitution, Alabama Constitution, or Alabama laws, rules, or regulations "promulgated for the purpose

of regulating the activities of a governmental agency require" non-immunity; or (2) when the agent "acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Ala. State Univ. v. Danley*, 212 So. 3d 112, 130 (Ala. 2016) (quoting *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)).

"The Alabama Supreme Court has largely equated qualified immunity with [State-agent] immunity." *Cantu*, 974 F.3d at 1236 (alteration adopted) (citation omitted). "'Under both Alabama law and federal law, the core issue is whether a defendant violated clearly established law.' That means the same facts that establish an officer is not entitled to qualified immunity 'also establish that [he] is not entitled to' [State-agent] immunity." *Id.* (alteration adopted) (citations omitted). Therefore, because the Officers are not entitled to qualified immunity on the facts currently pled for Maldonado's Fourth Amendment excessive force claim, neither are they entitled to State-agent immunity on those same facts for her assault and battery claim. As to the Officers in their individual capacities, therefore, Maldonado's claim of assault and battery goes forward.

### 2. Counts II & III – False arrest & False Imprisonment

Maldonado also claims the Officers' conduct amounted to both false arrest (Count II) and false imprisonment (Count III). The Officers argue that Maldonado fails to bring plausible causes of action for false arrest and false imprisonment because she has not demonstrated a lack of "probable cause to arrest [her] for criminal trespass under the Fourth Amendment." (Doc. 34 at 54). In Alabama, "probable cause must exist to make a lawful arrest." *Franklin v. City of Huntsville*, 670 So. 2d 848, 852 (Ala. 1995). Likewise, "[a] wrongful or false arrest will support a claim for false imprisonment." *Walker v. Briley*, 140

F. Supp. 2d 1249, 1262 (M.D. Ala. 2001) (citing *Upshaw v. McArdle*, 650 So. 2d 875, 878 (Ala. 1994)).

Alabama's standard for the existence of probable cause is the same as the federal standard. *See Nesmith v. Alford*, 318 F.2d 110, 122 (5th Cir. 1963) ("The Alabama standard of probable cause in actions for malicious prosecution appears to be the traditional one."); *see also Walker*, 140 F. Supp. 2d at 1262 (applying the federal probable cause standard in a state law claim of false imprisonment). Therefore, the Court's conclusion as to probable cause on the federal claims controls here. And because Maldonado alleges facts sufficient to plausibly show a lack of probable cause to arrest her for criminal trespass, she sufficiently states a claim for both false arrest and false imprisonment. *See supra* Part V.C.2; *see also Franklin*, 670 So. 2d at 852; *Walker*, 140 F. Supp. 2d at 1262.

The Officers assert State-agent immunity in response to the false arrest and false imprisonment claims. Because the Officers are not entitled to qualified immunity on the facts currently pled in Maldonado's Fourth Amendment false arrest claim, neither are they entitled to State-agent immunity for her false arrest and false imprisonment claims. *See Cantu*, 974 F.3d at 1236, *see also supra* Part V.C.5. As to the Officers in their individual capacities, therefore, Maldonado's claims of false arrest and false imprisonment go forward.

### 3. Count IV – Malicious prosecution

Maldonado also claims the Officers maliciously prosecuted her by charging her with disorderly conduct and resisting arrest. An Alabama malicious prosecution claim has five elements: (1) the defendant instituted a judicial proceeding against the plaintiff,

(2) without probable cause (3) but with malice, (4) and although the prior proceeding ended in the plaintiff's favor, (5) she still suffered damages. *Delchamps, Inc. v. Bryant*, 738 So. 2d 824, 831–32 (Ala. 1999).  Because Maldonado alleges she was acquitted by a jury of the charges against her, she sufficiently pleads the first and fourth elements for a judicial proceeding and a favorable termination.  She also claims to have suffered mental anguish from the ordeal, an ordeal that "presumably exacted an emotional toll on" her, satisfying the fifth element, damages. *Exford v. City of Montgomery*, 887 F. Supp. 2d 1210, 1227 (M.D. Ala. 2012) (citing *U.S. Fid. & Guar. Co. v. Miller*, 117 So. 668 (Ala. 1928)).

As for the second element, probable cause, the Officers argue that they had probable cause to arrest Maldonado only for criminal trespass.  However, the Court has already found Maldonado sufficiently pled a lack of probable cause to arrest her for that offense. So, she satisfies the second element of her malicious prosecution claim.  Similarly, to the third element—malice—"a jury can infer malice from the officer's lack of probable cause." *Id.* (citing *Kitchens v. Winn-Dixie Montgomery, Inc.*, 456 So. 2d 45, 47 (Ala. 1984)). Because, at this stage, the Officers lacked probable cause to arrest Maldonado for criminal trespass, and because the Officers rely on the existence of probable cause in arguing for dismissal, the Court concludes that the state malicious prosecution claim goes forward.

### E.  Town of Cottonwood

#### 1.  Federal claims

Against Cottonwood, Maldonado brings claims pursuant to § 1983 as well as state law.  The Court begins with Maldonado's federal claims.  Though the Court concludes that Maldonado has plausibly alleged constitutional violations by the town's Officers,

Cottonwood cannot be held vicariously liable for those violations. *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016).  Instead, "[i]t is only when the 'execution of the government's policy or custom inflicts the injury' that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (alteration adopted) (citation omitted).  Municipalities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978).  Municipalities "may be sued for constitutional deprivations[,] . . . even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91.  However, a municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694.  Instead, if "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," then the municipality "as an entity is responsible under § 1983." *Id.*  To plausibly allege the existence of such a municipal policy or custom, a plaintiff must first "identify either (1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker for the [municipality]." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citing *Monell*, 436 U.S. at 690–91).

In some circumstances, "the need to provide training may be 'so obvious' that a municipality's failure to train officers can rise to the level of deliberate indifference and

result in the municipality being subject to *Monell* liability." *Underwood v. City of Bessemer*, 11 F.4th 1317, 1333 (11th Cir. 2021) (citing *Harris*, 489 U.S. at 390).  If "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," then "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable." *Harris*, 489 U.S. at 390.

Maldonado claims she sufficiently alleges both a policy or custom and a failure to train for two of the remaining federal claims against Cottonwood.[11]  For her retaliatory arrest claim (Count VII) and false arrest claim (Count VIII), Maldonado alleges that when the Officers arrested her, they did so pursuant to an official "policy, and or/custom and practice." (Doc. 30 at 8).  Likewise, she alleges the Officers injured her "due to Defendant Cottonwood's inadequate training and/or supervision of its police officers." (*Id.* at 10, 12, 18).  But, as the Defendants correctly note, her allegations go no further than these naked conclusions.

Maldonado indicates she should be entitled to discovery to find facts to support her allegation of failure to train or a municipal policy or custom. (*See* doc. 41 at 36).  But as the Court has already noted, if it were to give Maldonado "a ticket to the discovery process" on claims which lack factual support, then it effectively gives her a ticket to "an unlimited

---

[11]  Maldonado's claim against Cottonwood for malicious prosecution (Count V) contains no factual allegations showing a municipal "policy or custom" or a failure to train that injured Maldonado. *Harris*, 489 U.S. at 385.  Because Cottonwood is not vicariously liable for the Officers' actions, this claim must be dismissed. *See Hoefling*, 811 F.3d at 1279.

fishing expedition." *Atkins*, 470 F.3d at 1359.  As with her other request for discovery, the Court declines to permit a fishing expedition against Cottonwood.

Maldonado's conclusory allegations of a custom, policy, or failure to train are insufficient to maintain federal claims against Cottonwood.  Indeed, she fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Maldonado provides no facts connecting Cottonwood to the Officers' behavior.  Nothing in her complaint gives rise to a plausible claim for relief against Cottonwood.  And because her complaint is thus deficient under Rule 8, "[s]he is not entitled to discovery" on this claim. *Iqbal*, 556 U.S. at 686.  Counts V, VII, and VIII against Cottonwood are due to be dismissed.

### 2.  State law claims

Maldonado's state law claims against Cottonwood do not fare better.  While "[i]t is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune[,] . . . if the statute does not shield the officer, it does not shield the city." *Howard v. City of Atmore*, 887 So. 2d 201, 211 (Ala. 2003).  On Maldonado's facts, ALA. CODE § 6-5-338(a) does not shield the Officers from the state law claims.  Neither, then, does § 6-5-338(b) shield Cottonwood.[12]

---

[12]    However, as Maldonado agrees, Alabama law bars any claim for punitive damages against municipalities. ALA. CODE § 6-11-26.  Maldonado's request for punitive damages against Cottonwood will be dismissed.

Alabama law, however, entitles a city to immunity for injuries caused by its agents unless the injuries resulted from neglect, carelessness, or unskillfulness. ALA. CODE § 11-47-190.   The Alabama Supreme Court has consistently held this statute exempts a municipality from liability for its agents' intentional torts. *Aliant Bank v. Four Star Invs., Inc.*, 244 So. 3d 896, 927 (Ala. 2017).  Based on § 11-47-190, Cottonwood argues that the state law claims for assault and battery (Count I), false arrest (Count II), false imprisonment (Count III), and malicious prosecution (Count IV) are due to be dismissed.  Assault and battery, false arrest, and false imprisonment claims in Alabama can be predicated on negligence in certain circumstances. *See, e.g.*, *Borders v. City of Huntsville*, 875 So. 2d 1168, 1183 (Ala. 2003).   However, § 11-47-190 would not immunize Cottonwood, according to the Alabama Supreme Court, "where a plaintiff alleges a factual pattern that demonstrates 'neglect, carelessness, or unskillfulness.'" *Id.*

In *Fowler v. Meeks*, a city appealed the denial of its motion to dismiss a complaint containing allegations that a non-resisting plaintiff was arrested, kicked, and beaten. 569 F. App'x 705, 706 (11th Cir. 2014) (per curiam).  The district court reasoned that immunity was inapplicable because the city was not immune from claims of negligence or unskillfulness. *Id.* at 707.  The Eleventh Circuit reversed because it determined that the allegations "constitute[d] more than negligence," showing, rather, "deliberate actions akin to intentional torts." *Id.* at 708.  Therefore, the city was entitled to municipal immunity under § 11-47-190. *Id.*

In this case, Maldonado alleges that as she was attempting to leave town hall in compliance with the Officers' orders, the Officers rushed, tackled, and beat her, causing

serious injuries. (Doc. 30 at 4).   On these facts, Maldonado alleges intentional and seemingly unnecessary infliction of physical force.   These allegations are similar to the charged intentional misconduct in *Fowler* akin to intentional torts. *See Fowler*, 569 F. App'x at 708.  Because the court held in *Fowler* that allegations of conduct that amount to more than negligence are barred by municipal immunity, this Court concludes that the state-law claims here, as currently alleged against Cottonwood, are barred by ALA. CODE § 11-47-190.[13]  Therefore, the motion to dismiss is due to be granted on the state law claims against Cottonwood.

## VI.  CONCLUSION

Accordingly, and for good cause, it is

ORDERED that the Defendants' Motion to Dismiss (doc. 33) is GRANTED to the following extent:

1)   Count I is DISMISSED to the extent that it is brought against Defendants Money and Smith in their official capacities; and it is DISMISSED as against Defendant Cottonwood.

2)   Count II is DISMISSED to the extent that it is brought against Defendants Money and Smith in their official capacities; and it is DISMISSED as against Defendant Cottonwood.

---

[13] While the Court recognizes that *Fowler* is an unpublished opinion, the Court finds its analysis persuasive.

3)     Count III is DISMISSED to the extent that it is brought against Defendants Money and Smith in their official capacities; and it is DISMISSED as against Defendant Cottonwood.

4)     Count IV is DISMISSED to the extent that it is brought against Defendants Money and Smith in their official capacities; and it is DISMISSED as against Defendant Cottonwood.

5)     Count V is DISMISSED in its entirety.

6)     Count VI is DISMISSED in its entirety.

7)     Count VII is DISMISSED to the extent that it is brought against Defendants Money and Smith in their official capacities; and it is DISMISSED as against Defendant Cottonwood.

8)     Count VIII is DISMISSED to the extent that it is brought against Defendants Money and Smith in their official capacities; and it is DISMISSED as against Defendant Cottonwood.

9)     Count IX is DISMISSED in its entirety.

10)     Count X is DISMISSED in its entirety.

11)     Count XI is DISMISSED in its entirety.

12)     Count XII is DISMISSED to the extent that it is brought against Defendants Money and Smith in their official capacities; and it is DISMISSED as against Defendant Cottonwood.

13)     Count XIII is DISMISSED in its entirety.

14)     Defendant Cottonwood is DISMISSED as a party in this case.

It is further

ORDERED that the Defendants' motion to dismiss (doc. 33) is DENIED in all other respects.

DONE this 29th day of September, 2023.

_____/s/  Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE